**Slip Op. 09-95**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| BOND STREET, LTD., | : | |
| *Plaintiff*, | : | |
| v. | : | |
| UNITED STATES, | : | |
| *Defendant*, | : | Court No. 08-00049 |
| and | : | |
| GLEASON INDUSTRIAL PRODUCTS, INC. | : | |
| and PRECISION PRODUCTS, INC., | | |
| | : | |
| *Defendant-Intervenors.* | | |

[Granting Plaintiff's motion for judgment on the agency record, and remanding scope ruling concerning antidumping order on hand trucks from the People's Republic of China]

Dated:  September 8, 2009

Fitch, King and Caffentzis (James Caffentzis), for Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Stephen C. Tosini and Courtney E. Sheehan); Irene H. Chen, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

Crowell & Moring, LLP (Matthew P. Jaffe), for Defendant-Intervenors.

## OPINION

RIDGWAY, Judge:

In this action, Plaintiff Bond Street, Ltd. – a New York importer of business and travel

products – contests the U.S. Department of Commerce's determination that Bond Street's Stebco

Portable Slide-Flat Cart (style no. 390009 CHR) ("Stebco cart") is within the scope of the antidumping duty order on hand trucks from the People's Republic of China ("PRC"). *See* Hand Trucks and Certain Parts Thereof from the People's Republic of China:  Scope Ruling on Stebco Portable Slide-Flat Cart, Inv. No. A-570-891 (May 30, 2007) ("Scope Ruling").

Pending before the Court is Plaintiff's Motion for Judgment on the Agency Record, in which Bond Street urges that Commerce's Scope Ruling be vacated.  Bond Street emphasizes that the antidumping order at issue requires that the projecting edge or toe plate of subject merchandise "slide[] under a load for purposes of lifting and/or moving the load," and asserts that its Stebco cart is not capable of sliding under a load in such a manner.  Bond Street contends that Commerce therefore should have reached a negative scope determination.  *See generally* Memorandum in Support of Bond Street Ltd.'s Motion for Judgment on the Agency Record ("Pl.'s Brief"); Plaintiff, Bond Street Ltd.'s Reply to Defendant and Defendant-Intervenors' Responses ("Pl.'s Reply Brief").

Bond Street's motion is opposed by the Government and by Gleason Industrial Products, Inc., and Precision Products, Inc. (collectively, "Domestic Manufacturers"), who maintain that Commerce's Scope Ruling is supported by substantial evidence and otherwise in accordance with law, and thus should be sustained. *See generally* Response to Bond Street's Motion for Judgment Upon the Administrative Record ("Def.'s Brief"); Defendant-Intervenors' Memorandum in Opposition to Bond Street's Motion for Judgment Upon the Agency Record ("Def.-Ints.' Brief").

Jurisdiction lies under 28 U.S.C. § 1581(c) (2000).[1]  For the reasons set forth below, Bond

---

[1]The instant action is Bond Street's second challenge to the determination at issue here. Commerce initially issued the Scope Ruling on May 30, 2007, but failed to mail a copy to Bond Street. Bond Street's first action seeking to contest the ruling was therefore deemed premature, and dismissed for lack of jurisdiction without prejudice to refiling.  *See* <u>Bond Street, Ltd. v. United States</u>, 31 CIT ____, 521 F. Supp. 2d 1377 (2007).

Street's Motion for Judgment on the Agency Record is granted, and Commerce's Scope Ruling is remanded for reconsideration.

## I. **Background**

In December 2004, the Department of Commerce published an antidumping duty order on hand trucks and certain parts thereof from the PRC. *See* Notice of Antidumping Duty Order:  Hand Trucks and Certain Parts Thereof From the People's Republic of China, 69 Fed. Reg. 70,122 (Dec. 2, 2004) ("Antidumping Order").   The Antidumping Order expressly defines the covered merchandise, both in terms of specific physical characteristics and in terms of functionality:

> A complete or fully assembled hand truck is a hand-propelled barrow consisting of a vertically disposed frame having a handle or more than one handle at or near the upper section of the vertical frame; at least two wheels at or near the lower section of the vertical frame; and a horizontal projecting edge or edges, or toe plate, perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame. *The projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the load.*
>
>  . . . . That the vertical frame, handling area, wheels, projecting edges or other parts of the hand truck can be collapsed or folded is not a basis for exclusion of the hand truck from the scope of the [order]. . . . Finally, that the hand truck may exhibit physical characteristics in addition to the vertical frame, the handling area, the projecting edges or toe plate, and the two wheels at or near the lower section of the vertical frame, is not a basis for exclusion of the hand truck from the scope of the [order].
>
> Examples of names commonly used to reference hand trucks are hand truck, convertible hand truck, appliance hand truck, cylinder hand truck, bag truck, dolly, or hand trolley.  They are typically imported under heading 8716.80.50.10 of the Harmonized Tariff Schedule of the United States ("HTSUS"), although they may also be imported under heading 8716.80.50.90. . . . Although the HTSUS subheadings are provided for convenience and customs purposes, the Department's written description of the scope is dispositive.
>
> Excluded from the scope are small two-wheel or four-wheel utility carts specifically

designed for carrying loads like personal bags or luggage in which the frame is made
from telescoping tubular material measuring less than ⅝ inch in diameter[.]

Antidumping Order, 69 Fed. Reg. at 70,122 (emphasis added).

After the Antidumping Order issued, Bond Street sought a ruling from Commerce that the

Stebco cart is beyond the scope of the Order, and therefore not subject to antidumping duties under

that Order. *See* Bond Street Request for Scope Ruling (Dec. 6, 2006) ("Request for Scope Ruling").

Bond Street contends that the Stebco cart is not a "hand truck" within the meaning of the

Antidumping Order, but – rather – a "portable luggage cart," designed for "personal uses such as

carrying luggage, carrying personal bags, or a salesman storing the cart in his car to carry in many

samples[] or sample cases together at one time to avoid multiple trips." *See id*. at 2, 4.[2]  Bond

Street's Request for Scope Ruling highlighted certain physical features of the Stebco cart that,

according to Bond Street, prevent a user from "slid[ing] [the] cart under a load for purposes of lifting

and/or moving the load," as required by the express terms of the Antidumping Order. *See id*. at 3.

Bond Street maintains that, as a practical matter, "items must be *lifted onto* the [toe] plate for

---

[2]In its Request for Scope Ruling, Bond Street stated that the Stebco cart "is ideal for carrying 3-4 pieces of luggage or sample cases which are between 8 inches and 12 inches deep." *See* Request for Scope Ruling at 3.  *See also* Bond Street Reply Comments (Feb. 12, 2007) at 3 (stating that Stebco cart is "designed for personal use, be it for carrying multiple luggage pieces when entering or exiting an airport, or personal bags or items while traveling or in the home," and is not "designed to move heavy equipment").

The Request for Scope Ruling indicated that the Stebco cart, "extended[,] measures approximately 40 inches high by 18.75 inches wide by 19 inches deep." *See* Request for Scope Ruling at 2; *accord*, Domestic Manufacturers Opposition (Jan. 25, 2007) at 5.  The Request further stated that the cart "collapses to . . . approximately 30 inches high by 18.75 inches wide, by 2 ⅝ inches deep." *See* Request for Scope Ruling at 2; *accord*, Domestic Manufacturers Opposition at 5.

According to Bond Street, the Stebco cart is properly classified under subheading 8716.80.50.20 of the HTSUS.  *See* Request for Scope Ruling at 2.

purposes of lifting and/or moving [them]." *Id*. at 2 (emphasis added).[3]

Specifically, Bond Street pointed to "the angled design of [the] toe plate combined with the [collapsing] structure of the plate and the lack of a kick plate," asserting that those features "make it virtually impossible to *slide* [*the Stebco*] *cart under a load* for purposes of lifting and/or moving a load, a necessary function of any hand truck." *See* Request for Scope Ruling at 3. Bond Street explained that the collapsible toe plate "is specifically designed to enable the [cart's] wheels to fold flat, for the [cart] to have more portability, for easy storage in a car trunk and behind a home/office door, and for use when traveling." *Id*. at 2. But the collapsibility feature also prevents the Stebco cart's toe plate from "slid[ing] under" a load.

In addition to the angled design and collapsibility of the toe plate, as well as the absence of a kick plate, Bond Street also pointed to a hook located on the rear of the cart (approximately 8½ inches from the ground) that is used to secure an elastic bungee cord (the other end of which is attached to the front of the toe plate), after the bungee cord has been pulled over the bags or other items on the cart. *See* Request for Scope Ruling at 2-3 (describing location, use, and purpose of bungee cord and hook); Bond Street Reply Comments (Feb. 12, 2007) at 2 (explaining that hook "serv[es] as the anchor for securing luggage and personal bags" on cart).[4] Bond Street emphasized

---

[3]*See also* Request for Scope Ruling at 4 (stating that items must be "manually lifted" onto the cart); Bond Street Reply Comments at 4 (explaining that cart was "designed with an intent that objects, such as luggage, will be placed on the toe plate by hand"); Bond Street Rebuttal Comments (May 28, 2007) at 2-3 (noting that "all items have to be lifted onto the Stebco cart").

[4]In its Request for Scope Ruling, Bond Street stated that "'Hand Trucks' do not normally include bungy cords as they are not required for hand truck use. Heavy large boxes sit securely on a hand truck as a result of their size and/or weight, and [bungy cords] are inconvenient in regular Hand Truck usage due to the time they take to unnecessarily secure a load." *See* Request for Scope Ruling at 3.

that the purpose of placing the hook so low on the back of the cart is to avoid damage to the cart by

"prevent[ing] [a user] from pushing the cart forward with his foot to obtain leverage to bring the cart

off the floor in order to lift and move a heavy load."  Request for Scope Ruling at 3; *see also* Bond

Street Reply Comments at 1-2 (explaining that hook's location "serves as a deterrent to the user to

push or kick [the cart] under a load").  Bond Street explained that the cart is designed to be pulled,

and that the cart "would be damaged if pushed from the rear."  Bond Street Reply Comments at 2;

*see also id*. at 5 (noting that height of cart, with telescoping handle extended, is intended to allow

user to "move the [cart] without having to bend when pulling it").[5]

---

[5]Besides detailing the physical features of the Stebco cart and their effect on the cart's ability to "slide[] under" a load, Bond Street's Request for Scope Ruling also addressed the expectations of the ultimate purchaser and the ultimate use of the cart, as well as the manner in which the cart is advertised.  *See* Request for Scope Ruling at 3-5.

Bond Street noted, for example, that, as a practical matter, the height of the Stebco cart prevents it from being loaded with more than two standard-size warehouse boxes (assertedly rendering the cart of little or no "industrial or warehouse utility"), and that (due to the design of the toe plate) the cart's "only viable use" is to move relatively light items such as luggage and sample cases, "which can be manually lifted onto the cart."  *See* Request for Scope Ruling at 3-4.  Bond Street further advised that the cart has a relatively modest load capacity of a maximum of 275 pounds, and that – in any event – the 275-pound maximum can be sustained only for limited periods, while the "ideal load" specified by the cart's manufacturer is 150 pounds.  *See* Bond Street Reply Comments at 3-5; Bond Street Rebuttal Comments at 2-3.  Bond Street noted that the cart's load-bearing capacity is also limited by the size and composition of its wheels (which are relatively small and made of PVC plastic, in contrast to the larger, shock-absorbent tires typical of hand trucks).  *See* Bond Street Reply Comments at 5; Bond Street Rebuttal Comments at 2-3.

Together with its Request for Scope Ruling, Bond Street submitted to Commerce a sample of the Stebco cart, as well as excerpts from catalogs and print-outs of web pages featuring photos and descriptions of various luggage carts and hand trucks.  *See* Request for Scope Ruling at 4-6 and Attachments; *see also* Audio Recording of Oral Argument at 51:22-52:19 (confirming that sample Stebco cart is included in the Administrative Record of this action).

The Domestic Manufacturers opposed Bond Street's request, asserting that – because the cart has "a hand-propelled barrow with a vertical frame having a handle at the upper section of the vertical frame; two wheels at the lower section of the vertical frame; and a horizontal projecting edge perpendicular to the vertical frame at the lower section of the vertical frame" – the Stebco cart "meets the precise definition of the subject merchandise," and thus falls squarely within the scope of the Antidumping Order. *See* Domestic Manufacturers Opposition (Jan. 25, 2007) at 2, *passim*; Domestic Manufacturers Reply (March 19, 2007) at 1-2; Domestic Manufacturers Continued Opposition (May 21, 2007) at 1. The Domestic Manufacturers also disputed each of Bond Street's specific claims concerning the physical characteristics of the cart.

The Domestic Manufacturers first targeted Bond Street's emphasis on the Stebco cart's lack of a kick plate. The Domestic Manufacturers argued that the absence of a kick plate "does not remove [the Stebco cart] from the scope of the order," because "it is not necessary for a hand truck to exhibit a kick plate for it to be covered." Domestic Manufacturers Opposition at 2; Domestic Manufacturers Reply at 1-2. The Domestic Manufacturers similarly took aim at Bond Street's statements concerning the location of the bungee cord hook on the rear of the bottom of the cart. Among other things, the Domestic Manufacturers suggested that a user might simply place his foot elsewhere at the bottom of the back of the cart, for leverage to help "position [the toe plate] beneath a load." *See* Domestic Manufacturers Opposition at 3 & n.2.

As to Bond Street's statements that the design of the toe plate prevents the Stebco cart from "slid[ing] under a load," the Domestic Manufacturers relied on dictionary definitions of "slide" and "under" to argue that the Antidumping Order requires only that a toe plate "can be placed in or into

a position beneath a load so the load can be slid across the toe plate's surface." *See* Domestic

Manufacturers Opposition at 2-3.  The Domestic Manufacturers further asserted that "an individual

can easily position the toe plate of the [Stebco cart] beneath a load by . . . tipping the load slightly

so as to better allow the toe plate to slide under the load." *Id*. at 3.  The Domestic Manufacturers

accordingly urged Commerce to rule that the Stebco cart is within the scope of the Antidumping

Order.  *Id*. at 8.[6]

Bond Street has stated that it "does not disagree" with the dictionary definition of "slide" that

the Domestic Manufacturers have cited.  *See* Bond Street Reply Comments at 2.[7]  Indeed, Bond

Street repeatedly urged Commerce and the Domestic Manufacturers to test the sample Stebco cart,

to determine whether – in the words of the Domestic Manufacturers' proffered dictionary definition

– the cart in fact will "go with a smooth continuous motion" under a load.  *See* Bond Street Reply

Comments at 2 (quoting dictionary definition of "slide" on which the Domestic Manufacturers rely);

*see also id*. at 2-3 (suggesting test of sample Stebco cart provided to Commerce, to "demonstrate[]

---

[6]The Domestic Manufacturers advanced two additional arguments, not directly relevant here. First, the Domestic Manufacturers argued that the Stebco cart does not fall within the Antidumping Order's express exclusion of "small two-wheel or four-wheel utility carts specifically designed for carrying loads like personal bags or luggage in which the frame is made from telescoping tubular material measuring less than ⅝ inch in diameter." *See* Domestic Manufacturers Opposition at 4-7 (*quoting* Antidumping Order, 69 Fed. Reg. at 70,122); Domestic Manufacturers Reply at 2; Domestic Manufacturers Continued Opposition at 2.  And, second, the Domestic Manufacturers asserted that the Stebco cart is similar to two products that Commerce previously determined to be within the scope of the Antidumping Order.  *See* Domestic Manufacturers Opposition at 7-8; Domestic Manufacturers Reply at 2; Domestic Manufacturers Continued Opposition at 2-3.

[7]*But see* Pl.'s Brief at 12-13 (asserting that, contrary to the Domestic Manufacturers' claims, "slide under" does not mean "move under, or be positioned under, when lifted," and that the Antidumping Order's functional requirement of a toe plate "cannot be met by a load sliding across or onto it.  The toe plate must also be able to slide under a load.").

that the toe plate cannot slide under the load"); Bond Street Rebuttal Comments (May 28, 2007) at

1-2 (detailing suggested test, and noting that Domestic Manufacturers either did not avail themselves

of opportunity to test cart when they viewed it at Commerce headquarters, or did not disclose results

of testing).[8]

Bond Street asserted, moreover, that "tipping the load slightly" before moving the toe plate

under the load (as the Domestic Manufacturers contemplate) would necessarily result in damage to

any bag, box, or other object at the bottom of the load, and, over time, would also damage the frame

of the cart itself.  *See* Bond Street Reply Comments at 2-3.  Even more to the point, Bond Street

stated that tilting the cart forward in an attempt to slide the toe plate under a load would cause the

wheels to collapse and the cart to begin to fold up (as if for storage), precluding the toe plate from

"slid[ing] under" the load.  *See* Bond Street Reply Comments at 2-3; Bond Street Rebuttal

Comments at 2.

Commerce analyzed Bond Street's Request for Scope Ruling under the framework of 19

C.F.R. § 351.225(k)(1) (2006), finding "the descriptions of the merchandise" to be dispositive.  *See*

Scope Ruling at 8.[9]  Commerce determined that the Stebco cart "clearly consists" of four "requisite

_____

[8]Although the Domestic Manufacturers inspected a sample of the Stebco cart, they apparently did not test it.  Nor has Commerce done so.  *See* Audio Recording of Oral Argument at 55:24-55:33, 1:26:45-1:26:47, 1:36:14-1:36:21, 2:02:22-2:03:10; 2:08:58-2:09:00 (counsel for Government asserts that Commerce did not test the cart, and was not required to do so).

[9]In determining whether merchandise falls within the scope of an antidumping order, Commerce begins by examining the language of the order at issue.  The "predicate for the interpretive process is language in the order that is subject to interpretation." Duferco Steel Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002).  If the terms of the order alone are not dispositive, the interpretive process is governed by 19 C.F.R. § 351.225(d), which directs Commerce to determine whether it can make a ruling based upon the request for a scope ruling and the factors listed in § 351.225(k)(1).  *See* Sango Int'l, L.P. v. United States, 484 F.3d 1371 (Fed. Cir. 2007). The three sources to be considered are "[t]he descriptions of the merchandise contained in the

characteristics" of a hand truck, as established by the scope language of the Antidumping Order –
(1) a vertical frame, (2) at least one handle, (3) two or more wheels, and (4) a projecting edge or toe
plate. *Id*. at 8. Indeed, Commerce noted that "Bond Street does not argue that the [Stebco cart] does
not contain any of these characteristics." *Id*. Commerce observed that, instead, "Bond Street argues
the Department should take into consideration the functions of the [Stebco cart] and the limitations
of its toe plate, focusing on the scope language [in the Antidumping Order] that states 'The
projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the
load.'" *Id*. (*quoting* Antidumping Order, 69 Fed. Reg. at 70,122). Commerce stated that "Bond
Street argues that the design of the collapsing toe plate, the placement of the bungy cord hook, and
the lack of a kick plate, make it impossible to slide the [Stebco cart] under a load." *Id*. Although
Commerce then briefly addressed the collapsible toe plate, the location of the bungee cord hook, and
the absence of a kick plate, *seriatim*, the agency's determination is silent on the ability of the toe
plate to "slide[] under a load for purposes of lifting and/or moving the load." *See generally* Scope
Ruling, *passim*.

After further finding that the Stebco cart did not fall within the Antidumping Order's express
exclusion of "small two-wheel or four-wheel utility carts specifically designed for carrying loads
like personal bags or luggage in which the frame is made from telescoping tubular material

petition, the initial investigation, and the determinations of [Commerce] (including prior scope
determinations) and the [International Trade] Commission." 19 C.F.R. § 351.225(k)(1).

If the analysis outlined above is not dispositive, Commerce initiates a scope inquiry pursuant
to 19 C.F.R. § 351.225(e), and applies the five Diversified Products criteria codified in the agency's
regulations. *See* 19 C.F.R. § 351.225(k)(2); Diversified Products Corp. v. United States, 6 CIT 155,
572 F. Supp. 883 (1983).

measuring less than ⅝ inch in diameter,"[10] Commerce concluded that Bond Street's Stebco cart falls within the scope of the Antidumping Order. *See* Scope Ruling at 8-9.

## II. **Analysis**

Commerce's determination in this case cannot be sustained, because the agency failed to make a finding as to one of the defining characteristics of merchandise within the scope of the Antidumping Order, as established by the terms of that Order – the very characteristic that Bond Street contends the Stebco cart at issue here does not possess. Specifically, Commerce failed to make a determination as to whether the toe plate of the Stebco cart can "slide[] under a load for purposes of lifting and/or moving the load." *See* Antidumping Order, 69 Fed. Reg. at 70,122; *see also* Pl.'s Brief at 7 (noting that Scope Ruling "[g]laringly omitted" any analysis of cart's ability to slide under a load); Pl.'s Reply Brief at 2 (stating that the Scope Ruling's analysis "omits the fifth indispensable and essential element" of a "hand truck" – the ability to slide under a load).

The Government and the Domestic Manufacturers contend that the Scope Ruling must be sustained because Commerce expressly addressed each of the physical characteristics of the Stebco cart that Bond Street cites in arguing that the cart's toe plate cannot "slide[] under a load." *See generally* Def.'s Brief at 6-8; Def.-Ints.' Brief at 3-4, 6-7. The Government and the Domestic Manufacturers point out, for example, that the Scope Ruling acknowledged the collapsibility of the toe plate, but that Commerce determined that the collapsibility did not put the cart beyond the scope

---

[10]Bond Street concedes that the frame of the Stebco cart includes some telescoping tubing with a diameter greater than ⅝ inch, which Commerce determined prevented the cart from being covered by the express exclusion in the Antidumping Order (quoted above). *See* Request for Scope Ruling at 2; Scope Ruling at 8-9.

of the Antidumping Order, because the Order specifically states that the fact "that . . . projecting edges or other parts of the hand truck can be collapsed or folded is not a basis for exclusion of the hand truck from the scope." *See* Def.'s Brief at 6-8; Def.-Ints.' Brief at 3, 6-7.

The Government and the Domestic Manufacturers further emphasize that the Scope Ruling took note of Bond Street's argument that the location of the bungee cord hook prevents a user from pushing the cart forward with his foot to gain leverage in order to lift the front of the cart off the ground, but that Commerce determined (a) that the hook's "primary purpose" is to "secure [items on the cart] for transport," (b) that there was no evidence to indicate that a user could not place his foot "at a position other than the . . . location of the hook (*e.g.*, below the hook or against the wheel)," and (c) that – in any event – the Antidumping Order expressly states that additional "physical characteristics" (such as a bungee cord hook) do not exclude merchandise from the scope of the Order. *See* Def.'s Brief at 6-8; Def.-Ints.' Brief at 3, 6-7.

The Government and the Domestic Manufacturers similarly note that the Scope Ruling considered the fact that the Stebco cart lacks a kick plate, and that Commerce concluded that the absence of such a feature did not remove the cart from the scope of the Antidumping Order because a kick plate "is not a required characteristic as set forth in the language . . . [defining] the scope" of the Order. *See* Def.'s Brief at 6-8; Def.-Ints.' Brief at 3, 6-7.

Contrary to the claims of the Government and the Domestic Manufacturers, however, it is not enough that Commerce analyzed each of the referenced physical characteristics in isolation. Bond Street has never claimed that the existence of those physical characteristics, in and of themselves, places the Stebco cart beyond the scope of the Antidumping Order. To the contrary, the

gravamen of Bond Street's argument is that those *physical* characteristics prevent the Stebco cart from having the *functional* or *operational* characteristic set forth in the Antidumping Order – that is, that "[t]he projecting edge or edges, or toe plate, slide[] under a load." *See*, *e.g.*, Pl.'s Reply Brief at 3-4 (asserting that "[i]t is the nature of the collapse mechanism, not the fact of its presence, that excludes this cart from the scope of the order," and arguing that Commerce erred in focusing on the existence of individual "design features" of the cart "rather than its operation"), 5 (stating that "Commerce's analysis fails to recognize that there is a distinction between physical and operational characteristics of hand trucks," and that agency was obligated to determine whether Stebco cart "possessed those operational features characteristic of the articles covered by the order, in addition to the physical characteristics"); Antidumping Order, 69 Fed. Reg. at 70,122.

But nowhere in its Scope Ruling in this case did Commerce make a determination as to whether the toe plate of the Stebco cart can "slide[] under a load for purposes of lifting and/or moving" that load. Nowhere in the Scope Ruling did Commerce address Bond Street's claim that the collapsible toe plate, the location of the bungee cord hook, and the absence of a kick plate prevent the toe plate of the Stebco cart from "slid[ing] under" a load. Commerce's analysis here thus rendered the Antidumping Order's "slide[] under" language mere surplusage, and verged on the disingenuous.[11]

---

[11]As explained in <u>Vertex</u>, another case involving a request for a ruling on the scope of the Antidumping Order at issue here:

> *The Order defines "projecting edge or toe plate" according to its function.* Specifically, it states that "[t]he projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the load." . . . Although Commerce specified that a hand truck may be "suitable for any use," the "any use" language is limited by this sentence [in the Antidumping Order] which requires that a hand truck's toe plate slide under a load to lift or move it. *Commerce must give effect to*

At oral argument, the Domestic Manufacturers (and, to some extent, the Government) sought to excuse the Scope Ruling as inartfully drafted, asserting that Commerce at least *implicitly* found that the Stebco cart was capable of "slid[ing] under" a load.  The Domestic Manufacturers argued, in essence, that "[a] court may 'uphold [an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Ceramica Regiomontana, S.A. v. United States, 810 F.2d 1137, 1139 (Fed. Cir. 1987) (*quoting* Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974); Colorado Interstate Gas Co. v. Federal Power Comm'n, 324 U.S. 581, 595 (1945)); *see*, *e.g.*, Audio Recording of Oral Argument at 1:29:29-1:29:40, 2:15:56-2:16:08, 2:40:10-2:40:49, 2:50:03-2:50:13, 2:56:19-2:57:24; *see also* Def.-Ints.' Brief at 8.  But, contrary to the Domestic Manufacturers' assertions, the Scope Ruling here does not suffer from a lack of clarity. In fact, the Scope Ruling is crystal clear.  It simply ignores the substance of Bond Street's claim.[12]

> *this sentence*, *which states an essential physical characteristic of the articles included within the scope and specifies the purpose for which the horizontal projecting edge or toe plate must be designed.*

Vertex Int'l, Inc. v. United States, 30 CIT 73, 79 (2006) (emphases added).

[12]Commerce's instructions concerning the suspension of liquidation confirm that the Scope Ruling focused solely on the physical characteristics of the Stebco cart, without regard to the cart's functional or operational ability to "slide[]" under" a load.  Summarizing the Scope Ruling, those instructions state: "Because the [Stebco cart] consists of a vertical frame, a handle, two wheels, and a projecting edge or toe plate, . . . and because the imported product does not fall within the exclusionary language of the scope, the Commerce Department found this product to be within the scope of the [Antidumping Order]." *See* Instructions re: Suspension of Liquidation (June 14, 2007).

Moreover, the language of the Scope Ruling itself belies any suggestion that Commerce somehow did not grasp the nature of Bond Street's argument.  As noted elsewhere above, the Scope Ruling accurately characterized Bond Street's argument as focusing on the functional or operational requirement embodied in the Antidumping Order – the requirement that the toe plate be capable of "slid[ing] under" a load.  Commerce wrote:

Bond Street does not argue that the . . . cart does not contain any of [the physical]

Because Commerce here failed to make a finding as to whether the Stebco cart's toe plate

"slides under a load for purposes of lifting and/or moving the load," Commerce's Scope Ruling

cannot be sustained.  This matter therefore must be remanded to the agency for further action.[13]

---

characteristics [specified in the Antidumping Order].  Rather, Bond Street argues the Department should take into consideration the functions of the . . . cart and the limitations of its toe plate, focusing on the scope language that states "The projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the load."  Bond Street argues that the design of the collapsing toe plate, the placement of the bungy cord hook, and the lack of a kick plate[] make it impossible to slide the . . . cart under a load.

Scope Ruling at 8.

In any event, even if the Scope Ruling were to be construed as having (implicitly) found that the toe plate of the Stebco cart is capable of "slid[ing] under" a load, any such determination would be vulnerable to attack on the grounds that it is not supported by substantial evidence in the record. There is little or no evidence in the existing record to indicate that the toe plate of the Stebco cart can "slide[] under a load for purposes of lifting and/or moving the load." *See generally*, *e.g.*, Audio Recording of Oral Argument at 1:34:43-1:35:13, 1:54:36-1:55:00, 2:08:30-2:08:42, 2:40:52-2:47:58.

[13]This result obviates any need to here address the merits of the Domestic Manufacturers' claim that a cart falls within the scope of the Antidumping Order even if the cart's toe plate slides under a load only if that load has been "tilted" or "tipped." *See*, *e.g.*, Def.-Ints.' Brief at 4, 11-12; *but see* Pl.'s Brief at 11-14; *see also* Audio Recording of Oral Argument at 1:47:47-1:48:00 (acknowledging that Scope Ruling did not consider "tilting" or "tipping" of load).

There is similarly no need to here reach the Domestic Manufacturers' related claim that the scope of the Antidumping Order requires only that it be *possible* to slide a cart's toe plate under a load – that is, that the Order does not require that the toe plate slide under the load with any degree of ease. *See*, *e.g.*, Def.-Ints.' Brief at 4, 6; *but see* Pl.'s Brief at 9-10 (*discussing* Vertex, 30 CIT at 76, where the Domestic Manufacturers agreed that the projecting plate of the cart there at issue did not "readily 'slide under' a load" and was thus beyond the scope of the Antidumping Order).

### III. <u>Conclusion</u>

For all the reasons set forth above, Plaintiff's Motion for Judgment on the Agency Record must be granted, and this matter remanded to the Department of Commerce for further action not inconsistent with this opinion.

A separate order will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Dated:  September 8, 2009
      New York, New York